# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DIANNA F.[1]**, | Case No. 6:21-cv-1725-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Christopher J. Brackett, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Dianna F. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying her application for Disability Insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family members.

Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ) and remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff applied for DIB and SSI on August 10, 2018, initially alleging an onset date of March 14, 2014. AR 141, 372. At her first hearing, Plaintiff amended her alleged onset date to January 7, 2015. AR 109. Plaintiff was 38 years old on the amended alleged disability onset date and worked predominantly in fast food restaurants. AR 109, 144. In her application, Plaintiff alleged that she is now unable to work due to chronic neck and back pain, osteoarthritis, severe anxiety, bipolar disorder, depression, nerve pain, and chronic pain. AR 144.

The agency initially denied Plaintiff's claim, AR 154, and upon reconsideration, AR 184. On May 2, 2019, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 242. She appeared by telephone for a hearing before ALJ Sullivan on January 27, 2020. AR 104. On February 13, 2020, the ALJ issued an order denying Plaintiff's claim for benefits. AR 201-14. On September 18, 2020, the Appeals Council vacated and remanded the ALJ's decision. AR 222-23.

A second hearing was held on March 24, 2021, again before ALJ Sullivan. AR 73. On April 21, 2021, the ALJ issued a decision again denying Plaintiff's claim for benefits. AR 22-49. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied her request for review on October 5, 2021. AR 1. Accordingly, the ALJ's second decision became the final decision of the agency from which Plaintiff now seeks review.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Bowen*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As an initial matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2024. AR 26. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 7, 2015, her amended alleged onset date.[2] AR 28. At step two, the ALJ found the following severe, medically determinable impairments: cervical degenerative disc disease, left foot degenerative joint disease, lumbago, asthma, sensorimotor neuropathy, posttraumatic stress

---

[2] Although the ALJ found Plaintiff had not engaged in substantial gainful activity, he noted that the record did show that in 2016, Plaintiff's earnings exceeded the permissible substantial gainful activity threshold. AR 29. The ALJ elected to "disregard such evidence in order to comply with the instructions of the Appeals Council." *Id.*

disorder, bipolar disorder, borderline personality disorder, and generalized anxiety disorder.

AR 29. At step three, the ALJ determined that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 30.

      The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except she can lift and carry 20 pounds
> occasionally and 10 pounds frequently, she can sit with normal
> breaks for a total of 6 hours in an 8 hour workday, she can stand
> and/or walk with normal breaks for a total of 6 hours in an 8 hour
> workday, she can stand and/or walk with normal breaks in
> combination for a total of no more than 6 hours in an 8 hour
> workday, she can push and pull as much as she can lift and carry,
> she can occasionally perform overhead reaching bilaterally, she
> can frequently climb ramps and stairs, she should avoid ladders,
> ropes, or scaffolding, she should never be required to balance, she
> can occasionally stoop, she can frequently crouch and crawl, she
> should avoid exposure to dust, odors, fumes, and pulmonary
> irritants, she can occasionally be exposed to vibration, she has the
> ability to understand, remember, and carry out simple instructions
> related to performing simple and routine tasks which means
> reasoning level 2 or less, using judgment [] related to simple work
> related decisions, she can occasionally interact with supervisors,
> co-workers, and the general public, dealing with changes in a
> work-place setting is limited to simple work-related decisions, she
> will be off-task up to but not including 5% scattered throughout the
> day.

AR 33.

      At step four, the ALJ found that Plaintiff did not have to ability to perform her past

relevant work. AR 39. At step five, the ALJ found Plaintiff had the ability to perform jobs that

exist in significant numbers in the national economy, specifically as a production assembler,

assembler of electrical accessories, and routing clerk. AR 40. The ALJ concluded that Plaintiff

was not disabled under the Act from the alleged onset date of January 7, 2015, through April 21,

2021, the date of the ALJ's decision. AR 41.

**DISCUSSION**

Plaintiff argues that the ALJ committed four errors. Specifically, that the ALJ erred by (A) failing to consider whether fibromyalgia was a severe, medically determinable impairment at step two; (B) finding the medical opinions of Jin Park, FNP, and Dr. Caitlin Williams not persuasive; (C) discrediting Plaintiff's subjective symptom testimony for reasons not supported by substantial evidence; and (D) finding lay witness evidence not credible. The Court will address each alleged error in turn.

**A.  Step Two – Fibromyalgia**

On Plaintiff's application filed on August 10, 2018, she listed her impairments as: neck issues, back issues, osteoarthritis, hemoglobinopathy, heart issues, severe anxiety, bipolar disorder, depression, chronic pain, and never pain. AR 144. Plaintiff first discussed a diagnosis of fibromyalgia with her medical provider on March 5, 2019. AR 859.

At her first hearing, the ALJ asked Plaintiff's attorney:

> Counsel, severe impairments I'm looking at are the cervical degenerative disc disease, left foot degenerative joint disease, post-traumatic stress disorder, bipolar disorder, generalized anxiety disorder. Also, there was some note of asthma in there. I'm going to find that severe. Non-severe impairments – hypertension, paddock steatosis, hemoglobinopathy, and lumbar strain – and I'm finding that one not severe due to duration. And [] there were some allegations of chest pain, but I never saw any definitive diagnosis for that. Does that sound about right to you, counsel, or was there anything in there that I missed?

AR 110. After some discussion of Plaintiff's lumbar strain and sciatica, the ALJ continued:

> I have two and a half hours on each of these cases to include the time I spend in here with you, so sometimes I do miss things, and I want to make sure – I consider the attorneys as a back up to me, to make sure I'm considering everything I need to be considered.

AR 112. At no point during this hearing or Plaintiff's second hearing did anyone mention Plaintiff's fibromyalgia diagnosis, and the ALJ did not address the diagnosis in either of his

opinions. Plaintiff argues that the ALJ erred by failing to address fibromyalgia at step two and that this failure effected the remainder of the ALJ's analysis.

### 1. Standards at Step Two

At step two of the sequential evaluation process, the ALJ determines whether the claimant has one or more impairments (or combination of impairments) based on review of the medical record, and then determines whether these impairments are "severe." *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. An impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c). It is Plaintiff's burden to prove that an impairment affects her ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001).

That said, "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen*, 482 U.S. at 146-47); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (stating that step two is a "de minimis screening device" to "dispose of groundless claims" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). Accordingly, the severity analysis within step two is a "low bar" to clear. *Gardner v. Astrue*, 257 F. App'x 28, 29 (9th Cir. 2007).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290) (emphasis added in *Webb*). As a result, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his [or her] conclusion is clearly established by medical evidence." *Id.* at 687 (quotation marks omitted). "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant]

did not have a medically severe impairment or combination of impairments." *Id.* In other words, there must be "substantial evidence to show that [the claimant's] claim was groundless." *Id.* at 688 (quotation marks omitted). Omissions at step two generally are harmless error if step two is decided in the claimant's favor and the non-severe conditions are considered by the ALJ. *Buck*, 869 F.3d at 1048-49 (concluding that the plaintiff "could not possibly have been prejudiced" by an omission of a severe impairment at step two because the ALJ decided step two in the plaintiff's favor and considered the condition).

### 2.  Standards for Fibromyalgia

"Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quotation marks omitted). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). "What is unusual about the disease" is that individuals suffering from fibromyalgia have normal "muscle strength, sensory functions, and reflexes." *Id.* (quotation marks omitted). Further, "there are no laboratory tests to confirm diagnosis." *Benecke*, 379 F.3d at 590. Fibromyalgia is "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.* Although there used to be "considerable skepticism that fibromyalgia was a real disease," a "sea-change" occurred in 2012 after the Social Security Administration issued a ruling recognizing fibromyalgia as a valid basis for finding of disability. *Revels*, 874 F.3d at 656; Social Security Ruling (SSR) 12-2P, 2012 WL 3104869, at *2 (July 25, 2012).

SSR 12-2P sets out the criteria to evaluate fibromyalgia:

The rule provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain my "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points of her body; and (3) there is evidence that other disorders are not accounting for the pain. Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

*Revels*, 874 F.3d at 656-57 (citations omitted) (quoting SSR 12-2P, at *2-3). Thus, regardless of which set of criteria is used, there must be evidence that other disorders do not account for a claimant's pain.

### 3. Analysis

Plaintiff assigns error to the ALJ's failure to address Plaintiff's fibromyalgia diagnosis at step two and argues that this failure effected the rest of the ALJ's analysis of Plaintiff's disability claim. The Commissioner argues that Plaintiff waived her right to have fibromyalgia considered by not listing it on her initial application and by not raising the disease during the colloquy with the ALJ. In the alternative, the Commissioner argues that the record does not support a conclusion that Plaintiff's fibromyalgia is either a medically determinable illness or that it is severe.

Regarding the Commissioner's first point, the Court rejects that Plaintiff waived any rights to have the ALJ consider fibromyalgia in evaluating her claim. Although the claimant ultimately bears the burden of establishing disability, "the ALJ had an affirmative duty to

supplement [Plaintiff's] medical record, to the extent it was incomplete" and, at a bare minimum, needed to address Plaintiff's fibromyalgia diagnosis. *See Webb*, 433 F.3d at 687; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented." (quotations and citations omitted)). The Court understands the time and other pressures that ALJs face in reviewing these claims, but that does not excuse them from their obligations to the claimants. *See* Lisa Rein, <u>Judges Rebuke Social Security for Errors as Disability Denials Stack Up</u>, (May 25, 2023, 6:00 AM), https://www.washingtonpost.com/ politics/2023/05/25/social-security-disability-denials-court-remands/.

There is evidence in the medical record of fibromyalgia and the ALJ needed to address the diagnosis. Dr. Caroline Coulter's assessment of Plaintiff on March 5, 2019, states "[s]creening and history are concerning for fibromyalgia. Labs ordered to rule out inflammatory alternative causes." AR 861. It is unclear from the Court's review of the record whether the labs were performed and reviewed. But from March 6, 2020, onward, Plaintiff's medical records consistently show a diagnosis of fibromyalgia and various treatments for chronic pain. *See, e.g.,* AR 875, 887, 896, 905, 910, 993, 1000, 1019, 1036.

In the record also was Dr. Caitlin Williamson's "Treating Source Statement" from November 27, 2020. AR 917. In her evaluation, Dr. Williamson stated she diagnosed Plaintiff with "[post-traumatic stress disorder] PTSD, fibromyalgia, chronic low back pain with left sided sciatic, sensorimotor neuropathy, asthma, muscle spasm." *Id.* Dr. Williamson did not give a specific number of trigger points, but only quantified them as "multiple." AR 918.

The Commissioner correctly points out that Plaintiff may not rely on a diagnosis of fibromyalgia alone to establish that it is a medically determinable impairment. But there is sufficient evidence in the record to raise the question of whether Plaintiff's fibromyalgia diagnosis is a severe, medically determinable impairment. Because Dr. Williamson did not quantify how many tender points she found, the record does not disclose whether Plaintiff has tenderness in at least eleven of eighteen points as required by the first criteria in SSR 12-2P. But there is evidence in the record that could support a finding under the second set of criteria. First, Plaintiff "has widespread pain that has lasted at least three months" even though "the pain may 'fluctuate in intensity and may not always be present.'" *See Revels*, 874 F.3d at 656 (quoting SSR 12-2P, at *2). Second, Plaintiff has experienced other fibromyalgia symptoms including fatigue, depression, and anxiety disorder. AR 147-48; *see Revels*, 874 F.3d at 656 (quoting SSR 12-2P, at *2).

What is unclear from the record, and what the ALJ must develop on remand, is whether there is evidence that other disorders, separate from fibromyalgia, account for Plaintiff's pain. Plaintiff suffers from other ailments that can co-exist with fibromyalgia, specifically neck pain and degenerative disc disease. *See Lisa J. v. Kijakazi*, No. 6:21-CV-1468-SI, 2023 WL 2678842, at *5 (D. Or. Mar. 29, 2023); *see also Swales v. Saul*, 852 F. App'x 253, 255 (9th Cir. 2021) ("SSR 12-2p does not require fibromyalgia to be a stand-alone impairment. And multiple circuits, including this court, have found degenerative disc disease or related MDIs to co-exist with fibromyalgia." (citation omitted)).

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam). "The ALJ's duty to supplement a claimant's record is triggered by

ambiguous evidence." *Webb*, 433 F.3d at 687. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* Here, the record is ambiguous and more information is needed to know whether "other disorders are not accounting" for Plaintiff's pain.

This error at step two was not harmless. The ALJ rejected Plaintiff's symptom testimony and evidence from her treating physicians because, in part, he found her complaints of pain inconsistent with the medical record. Specifically, the ALJ rejected this evidence because of "reported improvement in her symptoms with treatment, her strength was often noted to be generally normal throughout, 5/5." AR 38. If there is additional evidence to support a severe, medically determinable impairment of fibromyalgia, then the ALJ's reasons for discrediting Plaintiff and her medical provider's opinions may not be supported by substantial evidence. "[T]he symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days." SSR 12-2P, available at 2012 WL 3104869, at * 5. "Moreover, a person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663 (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting)). Therefore, such error was not harmless, and further proceedings are necessary.

The Court will address the remainder of Plaintiff's allegations of error to the extent they do not rely on the ALJ's failure to address fibromyalgia at step two, as the issues will likely arise on remand.

## B. Medical Opinion

Plaintiff next argues that the ALJ erred in finding the medical opinions of Jin Park, FNP, and Dr. Williamson not persuasive. Plaintiff filed her application for benefits after March 27,

2017, therefore Federal Regulation 20 C.F.R. § 404.1520c governs how the ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).

Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.152c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even though from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationships with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations . . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 1.  Jin Park, FNP

On June 5, 2015, Park filled out a physical residual function capacity report regarding Plaintiff's physical abilities. AR 683-84. As relevant here, Park opined that Plaintiff could not "stand and/or walk" for a total of "less than 2 hours in an 8-hour workday" without "experiencing severe . . . pain." AR 683. The ALJ concluded that Park's opinion was not persuasive because "the claimant testified that she worked part-time in a fast-food restaurant in shifts of five hours." AR 39. The ALJ also found Park's opinion not persuasive because Plaintiff's symptoms showed improvement over time and because of Plaintiff's daily activities were inconsistent with Park's opinion. *Id.*

The Court does not find the ALJ's reasons supported by substantial evidence. First, Park opined that Plaintiff could not stand for more than two hours *without experiencing severe pain*, not that Plaintiff was incapable of standing for more than two hours. AR 683. The evidence in the record is consistent with Park's opinion. Plaintiff testified and her medical records demonstrate she suffered severe pain when working the 4-5-hour shifts at Taco Bell. AR 82, 88.

Additionally, although a claimant's improvement with treatment can be "an important indicator of the intensity and persistence of . . . symptoms," 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3), the ALJ does not point to any symptoms that improved, and his citations to the record also provide no indication of any improvement for Plaintiff's symptoms. The Court's careful review of the record shows Plaintiff continuously complaining of severe pain and her medical providers making recommendations and altering her prescriptions in response. *See, e.g.*, AR 614, 620, 833, 859, 849, 912, 896, 1019.

Finally, the ALJ rejected Park's opinion based on Plaintiff's daily activities. The activities cited by the ALJ are from one medical provider's note that Plaintiff walks "a lot" and "does some yoga." AR 39 (citing AR 869). This does not constitute substantial evidence of Plaintiff's daily activities. First, there is not substantial evidence in the record that Plaintiff engages in walking or yoga on a daily, or even regular basis. The Commissioner argues that other references in Plaintiff's medical record regarding her walking are sufficient. The references include one on January 8, 2018, where her medical provider noted that Plaintiff "is more physically active, as she has to walk a longer distance to the bus stop." AR 610. Then on December 18, 2018, a medical provider noted that Plaintiff was "walking everywhere she goes." AR 636. But the record also shows that Plaintiff does not have a driver's license. AR 441. These references without more information do not provide substantial evidence regarding how often Plaintiff may walk, how long these walks are, or if such walks are consistent or inconsistent with Park's opinion.

When asked about her typical day at home, Plaintiff testified that she typically stays "in my pajamas and just lay around. I just have no motivation." AR 118. There was no follow up,

although the ALJ could have, about any walking or a yoga practice.[3] *See Peck v. Comm'r of Soc. Admin.*, 266 F. App'x 582, 584 (9th Cir. 2008) (remanding when ALJ made an assumption that claimant watched television while sitting, but made no attempt to seek out such information from claimant at hearing); *see also Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or *when the record is inadequate* to allow for proper evaluation of the evidence." (emphasis added)). The evidence in the record is insufficient to support the ALJ's assumptions concerning Plaintiff's daily activities, and his rejection of Park's opinion is not supported by substantial evidence.

### 2. Caitlin Williamson, MD

Dr. Williamson completed a "Treating Source Statement" on behalf of Plaintiff on November 27, 2020. AR 917-21. She listed Plaintiff's diagnoses as "PTSD, fibromyalgia, chronic low back pain with left sided sciatica, sensorimotor neuropathy, asthma, [and] muscle spasms." AR 917. Dr. Williamson opined that Plaintiff could sit for 45-60 minutes in an eight-hour day for up to four hours. AR 919. And that Plaintiff could stand or walk for fifteen minutes up to two hours in an eight-hour workday. *Id.* She also opined that Plaintiff would need a 15-30-minute break every two hours for "increased pain." AR 919-20.

The ALJ found Dr. Williamson's opinion unpersuasive for the same reasons as Park's, because Plaintiff's symptoms improved with treatment and Dr. Williamson's opinion was inconsistent with Plaintiff's activities of yoga and walking. AR 38. Those reasons are not supported by substantial evidence for the same reasons explained above.

---

[3] The record also shows that Plaintiff was referred to free yoga classes by her medical providers as part of her pain management. *See, e.g.*, AR 898, 911. It is incongruous to fault a claimant for following recommendations of her doctor to try and manage her symptoms.

The ALJ also discredited the statement because Dr. Williamson's "opinion consists of a 'check the box' form with no explanatory narrative or citations to the objective record." *Id.* To the contrary, Dr. Williamson did provide explanations within her statement. She was asked to describe the patient's symptoms, and she described them as "[m]ultiple, painful back spasms daily, nerve pain with some weakness in left leg." AR 918. Dr. Williamson described Plaintiff's signs and the relevant clinical findings as "[m]ultiple, palpable trigger points/tender points of low back. Normal strength. MRI [in] 5/2020 with disc bulge at L3-4." *Id.* Moreover, Dr. Williamson's treatment notes are consistent with her report. AR 1009-12; 1017-19; *see Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (finding the ALJ committed an "egregious" error by entirely ignoring treatment records when evaluating a "check-box form). The ALJ's reasons for rejecting Dr. Williamson opinion are not supported by substantial evidence.

### C. Plaintiff's Testimony

#### 1. Standards

A claimant "may make statements about the intensity, persistence, and limited effects of his or her symptoms." SSR 16-3P, 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Analysis

In her function report, Plaintiff reported that she is in constant pain, and that her anxiety has increased, which then increases her physical pain. AR 438. Her pain, anxiety, and PTSD make it difficult for her to sleep. AR 439. She testified at the hearing that she had to leave her job at Taco Bell because her "pain just got excruciating from having to lift over [her] head." AR 116. She has difficulty getting dressed and buttoning her shirts due to pain and suffers from anxiety and depression and spends most days "just lay[ing] around" in her pajamas. AR 118-19.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," AR 34, and the ALJ made no finding of malingering. Accordingly, the Court moves to the second step of analyzing a plaintiff's subjective testimony, at which the ALJ was required to make specific, clear, and convincing findings to support his rejection of Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036.

### a.  Specificity

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009))). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejection [a claimant's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [plaintiff's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular

parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Here, the ALJ summarized Plaintiff's testimony. AR 34. The ALJ then found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are not entirely consistent with the objective record." *Id.* He went on to say that the "medical evidence of record is inconsistent with and does not support the claimant's allegations of disabling physical functional limitations due to cervical degenerative disc disease, left foot degenerative joint disease, lumbago, asthma, and sensorimotor neuropathy." *Id.* To support his findings, the ALJ went through Plaintiff's severe impairments and then selectively summarized the treatment record to conclude that her allegations were not supported. AR 34-35.

But "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert*, 980 F.3d at 1278 (emphasis in original). Although the ALJ broadly rejects Plaintiff's reports of chronic pain and symptoms related to anxiety as inconsistent or unsupported by objective medical evidence, the ALJ never states which elements of Plaintiff's testimony he found not credible and which evidence contradicted that testimony. *See id.* at 1277. Indeed, after generally summarizing Plaintiff's testimony, the ALJ does not further mention any testimony by Plaintiff. Nor when discussing Plaintiff's medical records, does the ALJ link any medical evidence to any testimony by Plaintiff. As a result, the ALJ's opinion failed to properly evaluate how Plaintiff's pain is severe and specifically debilitating. As the Ninth Circuit as repeatedly instructed, without adequate specificity in the ALJ's opinion, the Court cannot evaluate whether the ALJ had specific, clear, and convincing reasons supported by substantial evidence in the record to reject

Plaintiff's subjective symptom testimony. The ALJ may not simply summarize Plaintiff's testimony and then summarize the medical record.

But even if the ALJ had identified which portions he found not credible, the reasons provided for rejecting Plaintiff's subjective symptom testimony were legally insufficient.

### b.  Daily Living Activities

As with the medical opinions, the ALJ referenced one notation from a medical provider in December 2019 that Plaintiff "[e]xercise walks a lot, does some yoga as well." AR 869. The Court infers that the ALJ found this reference to walking and engaging in a yoga practice contradicted Plaintiff's testimony regarding her pain. As explained above, there is not sufficient evidence in the record regarding Plaintiff's engagement in these activities and whether or not such engagement was inconsistent with her testimony. The ALJ may want to develop the record further on this issue on remand.

### c.  Work Activities

It also appears that the ALJ also relied on Plaintiff's work history to discount her symptom testimony, saying that Plaintiff "was able to engage in substantial gainful activity full time after the alleged onset date." AR 35. Plaintiff earned an average of $1,476.50 a month in 2016, putting her above the permissible substantial gainful activity earnings threshold amount of $1,130 per month. *Id.* When asked if she ever worked eight-hour shifts, Plaintiff testified that "[i]n the very, very beginning, a few years ago" she "attempted" to but "just couldn't do it" because of "[p]hysical pain and emotional pain." AR 82.  Plaintiff then explained, "I was forcing myself [to stand during the 4-5-hour Taco Bell shift], I had no choice, and I was in the hospital a lot, I was in constant pain a lot and having to call in a lot. I just had no knees. I would force myself to work and be in pain or be homeless, and I just, I had no options." AR 88.  Eventually, Plaintiff was let go from her job because she missed so much work. AR 82.

PAGE 22 – OPINION AND ORDER

The Court agrees with the ALJ that Plaintiff worked fulltime in 2016 and would not be eligible for disability for that year. But since that time, the amount that Plaintiff worked is consistent with her testimony regarding her pain and abilities. The Ninth Circuit has warned that claimants should not be punished for "work[ing] in spite of [their] symptoms, not because [the symptoms] were less severe than alleged." *Lingenfelter*, 504 F.3d at 1038. Moreover, Plaintiff never claimed or testified that *she could not stand* for any period of time, but only that to do so aggravated her symptoms and caused severe pain. Plaintiff's work attempts did not provide substantial evidence for the ALJ to discredit her symptom testimony.

### d.  Medical Record

The ALJ also dismissed Plaintiff's symptoms apparently linked to her cervical degenerative disc disease, left foot degenerative joint disease, and lumbago because of her "normal gait" and "normal strength." AR 35. Plaintiff argues that by ignoring Plaintiff's fibromyalgia at step two, the ALJ erred by comparing her symptoms to the objective evidence. The Court agrees. But notwithstanding the ALJ's failure to address fibromyalgia, the ALJ fails to explain why a normal gait or normal strength is inconsistent with a personal experience of severe pain. Such evidence is not inconsistent with Plaintiff's testimony regarding her pain. Further, because the Court has rejected the ALJ's other reasons, inconsistency with the objective medical evidence cannot be the sole reason for discrediting Plaintiff's subjective testimony. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (stating that an ALJ may not "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence" (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability to work solely because the available objective medical
evidence does not substantiate your statements").

### D.  Lay Witness Testimony

Finally, Plaintiff argues that the ALJ erred by discounting the lay witness testimony of
her romantic partner, Christopher M. (Christopher). The ALJ rejected the opinion because "the
record does not reflect that Christopher . . . has any formal medical background, or training."
AR 39. Christopher's lack of medical training, however, did not disqualify him from offering
evidence about his observations of what Plaintiff is capable of in any given day. *Timpone v.
Kijakazi*, 2022 WL 1599128, at *2 (9th Cir. May 20, 2022) ("Dismissing lay testimony because
the witness is not medically trained is inconsistent with this established principle [that lay
witness evidence is competent testimony], as lay witnesses by definition lack medical expertise
but are competent to testify as to the claimant's symptoms and daily functioning."); *Donovan B.
v. Acting Comm'r of Soc. Sec.*, 2023 WL 1879517, at *7 (W.D. Wash. Feb. 10, 2023) ("Lay
witnesses, by definition, lack medical expertise, and this lack of expertise, in and of itself, cannot
serve as a valid reason for discounting their statements."); *see also Diedrich v. Berryhill*, 874
F.3d 634, 640 (9th Cir. 2017) ("The fact that lay testimony and third-party function reports may
offer a different perspective than medical records alone is precisely why such evidence is
valuable at a hearing.").

The Commissioner argues that, even if there was error, any error was harmless because
Christopher's testimony identified no limitation not already accounted for in Plaintiff's
testimony and, therefore, the Court can discount Christopher's testimony for the same reasons.
Because the Court has rejected the ALJ's reasons to discount Plaintiff's testimony, those reasons
do not provide a basis to discount Christopher. Thus, the ALJ committed harmful error.

**E.  Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would have to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* The district court need not credit statements as true just because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful errors in not evaluating Plaintiff's fibromyalgia at step two, in evaluating the medical evidence of Park and Dr. Williamson, by not offering specific, clear, and convincing reasons supported by substantial evidence to reject Plaintiff's pain testimony, and in evaluating Plaintiff's lay witness testimony. As noted above, the record is not fully developed regarding Plaintiff's fibromyalgia diagnosis or her daily activities. And although the

ALJ failed to address Plaintiff's fibromyalgia at step two, it is not clear from the record that the ALJ is required to find Plaintiff disabled. Further proceedings are needed for the ALJ to supplement and reassess the record and to provide an adequate explanation, applying the correct legal standards, and providing sufficient evidence in assessing Plaintiff's application for DIB and SSI.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 26th day of July, 2023.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge